UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARNEST LAMONT WARREN,

        Petitioner,

                                  Case No. 1:10-cv-330
v.                                  Hon. Robert J. Jonker

CINDI S. CURTIN,

        Respondent.

_____/

### REPORT AND RECOMMENDATION

        Petitioner, a prisoner in a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.    Background

        On March 6, 2007, following a bench trial, petitioner was convicted of first-degree criminal sexual conduct (CSC 1), MCL 750.250b(1)(c), and assault with intent to do great bodily harm less than murder, MCL 750.84. Petitioner was sentenced as a habitual offender, fourth offense, MCL 769.12, to 30 to 75 years' imprisonment for his CSC 1 conviction and to 20 to 75 years' imprisonment for his assault conviction. *See People v. Warren*, No. 276816, slip op. at 1 (Mich. App. Sept. 18, 2008) (docket no. 16); Sentencing Trans. (March 6, 2007) at 5-7 (docket no. 15).

        On March 31, 2006, the victim, Desiree Rose, received her monthly social security check, and she obtained a fifth of rum, $35 worth of marijuana, and $100 worth of crack cocaine for a weekend of partying. The victim and a friend smoked all of the crack cocaine at a crack house in Muskegon, Michigan. The victim then walked to her sister's nearby residence, where she smoked some marijuana and shared her rum with her sister. Next, the victim went a short distance to another

1

friend's residence, where she was introduced to defendant. At some point in the late evening, the owner of that residence asked the victim and defendant to leave. The victim now needed somewhere to spend the night, and defendant invited her to a nearby abandoned house, where they could continue to party into the early morning hours. At trial, defendant testified that they made a sex-for-drugs agreement.

At the abandoned house, defendant led the victim to a second-floor bedroom without furniture, but with some bedding strewn across the floor. They shared a small quantity of crack cocaine and marijuana. Defendant then departed to obtain more intoxicants, while the victim fell asleep. Defendant returned with alcohol, which they both consumed. Defendant departed again, and he next returned with a quantity of crack cocaine. However, at this point, the victim indicated that she no longer wanted to have sexual relations with defendant, but she still wanted the crack cocaine. The victim, nevertheless, completely undressed in front of defendant, although she covered herself with a sheet. The relationship deteriorated after the victim smoked some of the crack cocaine without defendant's permission. A melee ensued in the bedroom, where defendant beat the victim severely, hitting her six or seven times in her face. The victim fought back, trying to push defendant out of a window, but she was ultimately rendered unconscious. When she regained consciousness, she was lying on her back, and defendant had his shirt off, his pants down, and his legs straddling one of her legs. While defendant's exposed penis was not inside of her body, the victim believed that a sexual penetration occurred because of the sensation she felt inside her vagina.

*People v. Warren*, No. 276816, slip op. at 1-2.

Petitioner, through counsel, presented four issues on appeal:

I.      [Petitioner]'s conviction for first degree criminal sexual conduct must be vacated because there was insufficient evidence that any sexual penetration occurred.

II.     [Petitioner]'s conviction for assault with intend to do great bodily harm less than murder must be reversed, because the trial court used a legally incorrect definition of "great bodily harm" thus depriving [petitioner] of due process where the prosecution failed to present sufficient evidence of a critical element of the crime.

III.    The trial court abused its discretion and denied [petitioner] a fair trial by admitting irrelevant, improper and unduly prejudicial rebuttal evidence.

IV.     [Petitioner] is entitled to resentencing because his sentencing guidelines were erroneously scored, and without those errors, his

> guidelines are significantly reduced; and also because his sentence
> for assault with intent to do great bodily harm departs from his
> guidelines for that offense.

Brief on Appeal (docket no. 19).

The Michigan Court of Appeals affirmed the conviction. *People v. Warren*, No. 276816, slip op. Petitioner raised the same four issues in his application for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Warren*, No. 137666 (Nov. 20, 2009). Petitioner raised the same four issues in this habeas petition.

## II.     Procedurally defaulted claim

Respondent contends that Issue III is barred from habeas review under the procedural default doctrine. The court agrees. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine**.** Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner

must have violated a procedural rule, but the state court mus also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The Michigan Court of Appeals performed only a "plain error" review of Issue III because petitioner failed to properly preserve this issue for appellate review by not objecting to the testimony at trial:

> Defendant next contends that the trial court abused its discretion by admitting irrelevant, improper, and unduly prejudicial rebuttal evidence. "Admission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion." *People v. Figgures,* 451 Mich. 390, 398, 547 N.W.2d 673 (1996). Because defendant did not object at trial to the testimony, this Court's review is limited to whether the alleged, unpreserved error affected his substantial rights. *People v. Rice,* 235 Mich.App. 429, 442, 597 N.W.2d 843 (1999).

> Generally, rebuttal evidence is properly admitted to explain, contradict, or otherwise refute an opponent's evidence. *Figgures, supra* at 399, 547 N.W.2d 673. A party may not introduce evidence during rebuttal unless it properly responds to evidence introduced or a theory developed by the opponent. *Id.* Rebuttal testimony on collateral issues is generally improper. *People v. Richardson,* 139 Mich.App. 622, 628, 362 N.W.2d 853 (1984). However, "a party may introduce rebuttal evidence to contradict the answers elicited from a witness on cross-examination regarding matters germane to the issue if the rebuttal evidence is narrowly focused on refuting the witness' statements." *People v. Spanke,* 254 Mich.App. 642, 644-645, 658 N.W.2d 504 (2003); see also *People v. Vasher,* 449 Mich. 494, 537 N.W.2d 168 (1995).

> In the instant case, defendant argues that the trial court improperly admitted rebuttal testimony from a police detective, which amounted to an attack on defendant's credibility. The rebuttal evidence, however, followed defendant's case-in-chief, during which defendant testified. Throughout the cross-examination of defendant, the prosecution attacked defendant's credibility, focusing on defendant's statements to the police during an interview following the incident. At trial, defendant testified during cross-examination that he initially denied to the police that he knew anything about the incident in question. Defendant then testified that he later changed his story while talking to the police, and admitted that he was present at the residence of the victim's friend and that he left that residence with the victim. Defendant then told the police that another African-American male joined them as they left that residence, and the victim and that male went on their way without

4

defendant. Defendant finally testified that he eventually told the police everything, including that he and the victim went to the abandoned house.

The prosecution subsequently recalled a police detective, who interviewed defendant, as a rebuttal witness. Importantly, the detective contradicted defendant's trial testimony that he ultimately told the police that he took the victim to the abandoned house.

A witness's credibility is always significant. *People v. Layher,* 238 Mich.App. 573, 580, 607 N.W.2d 91 (1999). Again, the prosecution "may introduce rebuttal evidence to contradict the answers elicited from a witness on cross-examination regarding matters germane to the issue if the rebuttal evidence is narrowly focused on refuting the witness' statements." *Spanke, supra* at 644-645, 658 N.W.2d 504. In the instant case, that is exactly what the prosecution did by recalling the detective as a rebuttal witness, and that rebuttal testimony was limited to defendant's statement and to specifically refuting defendant's testimony that he told the police everything, i.e., that he went to the abandoned house with the victim and that she was injured from running into the walls. The issue was germane to the question of guilt or innocence because it related to defendant's being forthcoming or not forthcoming about having taken the victim to the abandoned house. See *People v. Lester,* 232 Mich.App. 262, 274-275, 591 N.W.2d 267 (1998) (discussing *Vasher, supra* ). We, therefore, cannot conclude that the admission of the testimony constituted plain error.

*People v. Warren*, No. 276816, slip op. at 4-5.

Petitioner did not object to the rebuttal evidence at trial.  Trial Trans. III at 96-101 (docket no. 14).  Petitioner's failure to comply with the state's contemporaneous-objection rule resulted in a procedural default to this claim for purposes of federal habeas review.  *See, e.g., Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). The state court's plain error analysis did not save Petitioner from the procedural default of this claim.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006).  "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits."  *Id.  See also, Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver

of the procedural default).  Accordingly, Petitioner's Issue III is procedurally defaulted for purposes of this habeas review.

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner does not set forth any cause for this default.  Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the limited nature of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id.* At 329.  In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).  "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted.  He has failed to meet the fundamental miscarriage of justice exception.  Petitioner's Issue III is procedurally barred and not subject to federal habeas review.

### III.    Petitioner's remaining habeas claims

### A.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted the issues raised in his amended petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, – U.S. –, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state

8

court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### B.    Discussion

### 1.    Must [petitioner]'s conviction for first degree criminal sexual conduct be vacated because there was insufficient evidence that any sexual penetration occurred?

Petitioner contends that the prosecution failed to introduce sufficient evidence that he sexually penetrated the victim. Petitioner's Brief at 11(docket no. 19). The victim claimed to be sleeping during the alleged assault, only to awake and find petitioner standing over her with his penis out. There was no evidence of any sexual encounter, willing or otherwise. *Id.* The Michigan Court of Appeals addressed this issue as follows:

> Defendant challenges the sufficiency of the evidence presented at trial for his CSC 1 conviction, arguing that the prosecution did not prove the element of "penetration" beyond a reasonable doubt. We disagree.

> In an appeal challenging the sufficiency of the evidence presented to sustain a conviction, this Court views the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Jaffray*, 445 Mich. 287, 296, 519 N.W.2d 108 (1994). The prosecution may offer circumstantial evidence and reasonable inferences as proof of the elements of a crime. *People v. Carines*, 460 Mich. 750, 757, 597 N.W.2d 130 (1999).

> To convict a defendant under MCL 750.520b(1)(c), "the prosecution must prove two elements: (1) a sexual penetration (2) that occurs during the commission of another felony." *People v. Wilkens*, 267 Mich.App. 728, 737, 705 N.W.2d 728 (2005). MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

> In the instant case, the victim was rendered unconscious as she attempted to defend herself from defendant's blows during their altercation. When she regained consciousness, defendant's penis was not inside of her body, but on her leg.

9

However, the victim believed that defendant sexually penetrated her, because she felt a sensation in her vagina and it felt as if she had had sexual intercourse. After the attack, the victim was treated at the emergency room at Hackley Hospital in Muskegon. Her pelvic examination revealed three areas of bruising to her posterior fourchette. The emergency room physician testified that this type of bruising does not occur in typical sexual intercourse and that such bruising was indicia of sexual assault. While a forensic scientist later failed to find any of defendant's pubic hair, semen, or other DNA in the samples contained in the victim's CSC kit, a sheet collected at the crime scene contained blood matching the victim's DNA and semen matching defendant's DNA.

To the extent that the trial court found it necessary to infer sexual penetration, as we noted earlier, "[c]ircumstantial evidence and reasonable inferences that arise from the evidence can constitute sufficient proof of the elements of the crime." *People v. Akins*, 259 Mich.App. 545, 554, 675 N.W.2d 863 (2003). Significantly, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences ." *People v. Hardiman*, 466 Mich. 417, 428, 646 N.W.2d 158 (2002). On the record before us, a reasonable inference could be drawn that a sexual penetration occurred based on the testimony of the victim, the emergency room physician, and the forensic scientist. *See People v. Legg*, 197 Mich.App. 131, 132, 494 N.W.2d 797 (1992) (a trier of fact may make reasonable inferences from the facts, if supported by direct or circumstantial evidence). While defendant ultimately argues on appeal that the trial court should have afforded more weight to his trial testimony, this argument entirely lacks merit. In a bench trial, "[s]pecial regard will be given to the trial court's opportunity to judge the credibility of the witnesses and its decision will be affirmed where there is sufficient evidence to support the court's findings." *People v. Cyr*, 113 Mich.App. 213, 222, 317 N.W.2d 857 (1982). The trial court specifically found that defendant lacked credibility.

Viewed in the light most favorable to the prosecution, we conclude that the evidence was sufficient to enable the trier of fact to find beyond a reasonable doubt that defendant sexually penetrated the victim. *Jaffray, supra* at 296, 519 N.W.2d 108; *Wilkens, supra* at 737, 705 N.W.2d 728.

*People v. Warren*, No. 276816, slip op. at 2-3.

The Michigan Court of Appeals properly addressed this issue.  In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that the Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364.

10

Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added).  In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict.  *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007).  The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution.  *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Based on the record in this case, the court concludes that the Michigan Court of Appeals properly found that petitioner's conviction was supported by sufficient evidence.  Petitioner contends that his actions did not prove the element of "penetration" required to establish first-degree criminal sexual conduct.  Specifically, petitioner points out testimony that his penis was not inside the victim's body when she regained consciousness, but on her leg.  Petitioner's Brief at 12.  While this evidence indicates that there was no penetration at the specific point in time when the victim regained consciousness, it does not demonstrate that penetration did not occur while the victim was unconscious.  Evidence and testimony at trial supports the trial court's finding that penetration did occur.  The victim testified that when she regained consciousness, petitioner was straddling her leg, with his penis on her, very close to her vagina.  Trial Trans. I at 92-93 (docket no. 12).  The victim also testified to having a sensation in her vagina as if she had just had intercourse and a sore bottom as if she had been penetrated there as well.  *Id.*  Dr. Gerald Lee Buchanan, the emergency room doctor who saw the victim,  testified at trial that "The pelvic examination revealed some milky

discharge with three areas of bruising of what's called the posterior fourchette or kind of the posterior entry of the vagina." Trial Trans. II at 80 (docket no. 13). Dr. Buchanan further testified to the significance in suspected rape cases of trauma to the posterior fourchette. *Id.* He stated that it indicates "significant trauma to the area" and does not typically occur in normal intercourse unless it is "very vigorous." *Id.* At 83. This kind of bruising is typical and the most common injury seen in sexual assault cases. *Id.* At 83-84. Finally, a sheet collected at the crime scene contained blood matching the victim's DNA and semen matching petitioner's DNA. Trial Trans. III at 8-9, 11, 13, 20, 28. Viewing the evidence in the light most favorable to the prosecutor, the court could conclude that sexual penetration occurred.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to relief on this claim.

> **2.      Must [petitioner]'s conviction for assault with intent to do great bodily harm less than murder be reversed, because the trial court used a legally incorrect definition of "great bodily harm" thus depriving [petitioner] of due process where the prosecution failed to present sufficient evidence of a critical element of the case?**

Petitioner seeks habeas relief arising from the trial court's use of a legally incorrect definition of "great bodily harm" during the course of a bench trial. He argues that, had the correct definition been used, the prosecution would have failed to present sufficient evidence of petitioner's intent to cause permanent injury. The correct definition of "great bodily harm" is "serious *and* permanent injury," not "any injury that could seriously harm the health or function of the body." Petitioner's Brief at 15-16 (emphasis added). Petitioner argues that the prosecution offered

insufficient evidence regarding petitioner's intent to inflict permanent injury, and thus, had the correct definition been used, would have failed to prove every element of assault with intent to do great bodily harm less than murder.

Petitioner challenges the state court's definition of a state crime. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.*, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Habeas corpus relief is not warranted on the basis of an improper jury instruction simply because the instruction is undesirable, erroneous or universally condemned. *Estelle*, 502 U.S. at 72. The instruction cannot be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* The only question arising out of a federal habeas challenge to a state court's jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotations omitted).

The Michigan Court of Appeals' determination that the state trial court followed the correct state law in determining petitioner's guilt is not cognizable on habeas review. Title 28 U.S.C. § 2254(a) provides that relief may only be granted to a petitioner "in custody in violation of the constitution or laws or treaties of the United States." The power of the writ of habeas corpus does not extend beyond the application of federal law and the federal courts cannot intervene in order to correct a perceived violation of state law. *Estelle*, 502 U.S. at 67-68. The Supreme Court has repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). "A state is free within extremely broad limits to decide upon the

13

elements of a crime." *Eaglin v. Welborn*, 57 F.3d 496, 500 (7th Cir. 2005). "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502, U.S. at 71-72. "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the [state] model." *Id.*, at 72. Therefore, petitioner has not stated a claim upon which habeas relief may be granted.

Alternatively, even if this issue was cognizable, the state trial court did not use a legally incorrect definition of "great bodily harm" which enabled the prosecution to use a lower standard to prove assault with intent to do great bodily harm. The Michigan Court of Appeals addressed this issue as follows:

> Next, defendant asserts that the trial court used a legally incorrect definition of "great bodily harm" when deciding the case, enabling the prosecution to use a lower standard to prove assault with intent to do great bodily harm. Defendant argues not only that the trial court applied an incorrect definition of great bodily harm, but also that, if the correct definition had been used, the prosecution failed to satisfy that element to sustain defendant's conviction of assault with intent to do great bodily harm less than murder. We disagree.

> Initially, we note that, in arguing that the trial court used an incorrect standard, defendant relies on the former version of CJI2d 17.7(4), which provided that "[g]reat bodily harm means a physical injury that could seriously and permanently harm the health or function of the body." CJI2d 17.7(4) no longer reflects the standard argued by defendant; it was changed, after the date of defendant's trial, to eliminate the word "permanently." Moreover, "[t]he Criminal Jury Instructions are not officially sanctioned by the Supreme Court." *People v. Stephan,* 241 Mich.App. 482, 495, 616 N.W.2d 188 (2000). "Where a Criminal Jury Instruction does not accurately state the law, it will be disavowed by the courts." *Id.* Thus, we do not look to the cited standard instruction to decide the issue in this case.

> The offense of assault with intent to do great bodily harm less than murder is a specific intent crime, consisting of the following elements: (1) an attempt or threat with force or violence to do corporal harm to another, i.e., an assault, and (2) an intent to do great bodily harm. *People v. Brown,* 267 Mich.App. 141, 147, 703 N.W.2d 230 (2005). "This Court has defined the intent to do great bodily harm as 'an intent to do serious injury of an aggravated nature.' " *Id.,* quoting *People v. Mitchell,* 149 Mich.App. 36, 39, 385 N.W.2d 717 (1986).

In the instant case, the trial court concluded that defendant committed the offense of assault with intent to do great bodily harm less than murder, inferring defendant's intent from the nature of the victim's injuries. At trial, the victim testified that defendant hit her in the face six or seven times. Defendant also admitted to hitting the victim a number of times at trial and in a jailhouse audiorecording. In that audiorecording, he also admitted that she was severely injured, believing that her jaw had to be "rewired." A responding police officer found the victim lying on a couch with blood all over her face, hands, and clothing. The medical witnesses testified that the victim sustained the following injuries: her left eye was completely swollen shut, and she had moderate swelling of her right eye, two lacerations on her forehead, bruises on her face and arms, pain and tenderness in her upper chest, and multiple bruises on both knees. The victim was beaten so severely that she sustained bilateral orbital floor fractures in both eyes.

On the record, there is no indication that the trial court did not follow the correct statement of the law concerning the offense of assault with intent to do great bodily harm. Also, we presume that the trial court, sitting as trier of fact in this bench trial, knew the law and considered only the evidence properly before it. *Dep't of Human Services v. Nierescher,* 277 Mich.App. 71, 84, 744 N.W.2d 1 (2007). Further, we conclude that the trial court's findings of fact with respect to this element were not clearly erroneous. The aforementioned testimony and evidence were sufficient to give rise to an inference of the necessary intent; indeed, "[a]n intent to harm the victim can be inferred from [a] defendant's conduct." *People v. Parcha,* 227 Mich.App. 236, 239, 575 N.W.2d 316 (1997). The record supports the trial court's conclusion that defendant intended to do great bodily harm, where defendant repeatedly hit the victim in her face, causing swelling and bilateral orbital floor fractures in both eyes, as well as other injuries; it is a reasonable inference that defendant intended to do serious injury of an aggravated nature. *Brown, supra* at 147, 703 N.W.2d 230.

*People v. Warren*, No. 276816, slip op. at 3-4.

Before trial, the prosecution objected to using CJI2d 17.7(4) to define the term "great bodily harm" as "mean[ing] physical injury that could seriously and permanently harm the health or function of the body." Instead, the prosecution sought to define "great bodily harm" as "any injury that could seriously harm the health or function of the body." Trial Trans. at 4-6, 9-10 (Jan. 29, 2007) (docket no. 10). Petitioner asserts that the court erroneously relied on the prosecution's definition of "great bodily harm." However, the

15

government, during trial and in its brief, cited several cases in which the Michigan Court of Appeals used its definition. Trial Trans. at 4-6, 9-10 (docket no. 10). Moreover, reliance on the Michigan Criminal Jury Instructions is not mandatory. *People v. Petrella*, 380 N.W.2d 11, 13 (Mich. 1985); *People v. Miller*, 453 N.W.2d 269, 270 (Mich. App. 1990). The Michigan Court of Appeals "has defined the intent to do great bodily harm as 'an intent to do serious injury of an aggravated nature.'" *People v. Brown*, 703 N.W.2d 230, 236 (Mich. App. 2005) quoting *People v. Mitchell*, 385 N.W.2d 717 (1986). This definition in no way indicates that the element of "permanent injury" is required. The definition used by the trial court was not incorrect, as petitioner contends, and the Michigan Court of Appeals properly addressed the issue. Accordingly, petitioner's Issue II, that the trial court used an incorrect definition of "great bodily harm," should be denied. The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

> **3.    Is [petitioner] entitled to resentencing because his sentencing guidelines were erroneously scored, and without those errors, his guidelines are significantly reduced; and also because his sentence for assault with intent to do great bodily harm departs from his guidelines for that offense?**

Petitioner argues that he is entitled to resentencing because his sentencing guidelines for offense variables (OV) 7 and OV 11 were erroneously scored. Petitioner also contends that the trial court erred by not preparing sentencing guidelines for his assault with intent to do great bodily harm. The Michigan Court of Appeals addressed this issue as follows:

Defendant next argues that the sentencing court erroneously scored offense variable (OV) 7 at 50 points, and OV 11 at 25 points. Significantly, a trial court's scoring decision will be upheld if there is any evidence in the record to support it. *People v. Kegler,* 268 Mich. App. 187, 190, 706 N.W.2d 744 (2005).

First, defendant challenges the trial court's OV 7 scoring of 50 points, reflecting that "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). At trial, the victim testified that defendant hit her in the face six or seven times. At trial, and in a jailhouse audiorecording played at trial, defendant admitted to hitting the victim a number of times, and he also admitted that the victim was severely injured, believing that her jaw had to be "rewired." In the jailhouse recording, defendant also expressed a lamentation that he should not have beat the victim to "that" extent and that he had never done anything like that in the past. The record revealed how the police found the victim, and the extent of her injuries. As noted previously, the victim was beaten so severely that she sustained bilateral orbital floor fractures in both eyes. Also, the emergency room physician testified that "[i]t takes a lot of trauma" to cause such bilateral orbital floor fractures.

"Brutality" is not defined in the statute, but *Random House Webster's College Dictionary* (1997) defines it as "the quality of being brutal," and it defines "brutal" as "savage; cruel; inhuman" or "harsh; severe." Defendant's severe beating of the victim, which caused bilateral orbital floor fractures in both of her eyes, falls within any reasonable understanding of excessively brutal conduct. Thus, the record supports a score of 50 points for OV 7, *Kegler, supra* at 190, 706 N.W.2d 744.

Next, defendant challenges the trial court's OV 11 scoring of 25 points, reflecting that "[o]ne criminal sexual penetration occurred ." MCL 777.41(1)(b). Under MCL 777.41(2)(c), "[p]oints should not be scored, however, for the one penetration underlying a CSC 1 conviction." *People v. Matuszak,* 263 Mich. App. 42, 61, 687 N.W.2d 342 (2004). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). Additionally, MCL 777 .41(2)(a) requires the non-offense penetration to arise out of the sentencing offense. "Arise out of" has been described as "at the same place, under the same set of circumstances, and during the same course of conduct...." *People v. Mutchie,* 251 Mich. App. 273, 277, 650 N.W.2d 733 (2002).

As noted earlier, there was sufficient evidence that at least one penile/vaginal penetration occurred beyond a reasonable doubt. However, we further find that the whole record supports at least one additional penetration that could be scored under MCL 777.41.

The emergency room physician testified that there was significant trauma to the victim's vaginal area, and he found that there were three distinct areas of bruising. The victim also testified that her "butt" or "bottom" was injured during the incident, but it was unclear whether that injury was a result of the physical altercation or the sexual assault. However, the PSIR provides more context and some record support that another penetration occurred:

[The victim] stated the suspect fondled her and forced her to have intercourse with him while she was standing. Her comments to the nurse were that most of it happened while she was standing. The nurse asked the victim if she thought the suspect had done anything to her anally. She advised she thought he did.

On this record, we conclude that there is a reasonable inference that more than one sexual penetration occurred. The emergency room physician testified that there was significant trauma to the genital area. Additionally, the victim testified that her "butt" or "bottom" was injured during the incident, and, according to the PSIR, the victim told a nurse that she believed that an anal penetration occurred. While the emergency room physician agreed that her rectal area appeared normal, the sexual penetration need be only "however slight." MCL 750.520a(r). There is evidence in the record to support the OV 11 score. *Kegler, supra* at 190, 706 N.W.2d 744. Again, a trial court's scoring decision will be upheld if there is any evidence in the record to support it. *Kegler, supra* at 190, 706 N.W.2d 744.

Finally, we reject defendant's argument that he must be resentenced for his assault conviction because no sentencing guidelines were prepared for that conviction and because his sentence for that conviction therefore amounts to an unlawful departure. Defendant was convicted of multiple offenses; thus, the trial court was required to score each offense, "subject to [MCL 771.14]...." MCL 777.21(2). Because defendant received concurrent sentences, the trial court was not required to provide a recommended minimum sentence range for each conviction for which a consecutive sentence (not applicable here) was authorized, MCL 771.14(2)(e)(i), but instead was only required to prepare the recommended minimum sentence range for the crime having the highest crime class. MCL 771.14(2)(e)(ii). CSC 1 is a class A felony, MCL 777.16y, while assault with intent to do great bodily harm is a class D felony, MCL 777.16d. Thus, for sentencing on defendant's multiple convictions with concurrent sentences, the guidelines were properly prepared. *People v. Mack,* 265 Mich. App. 122, 128, 695 N.W.2d 342 (2005).

*People v. Warren*, No. 276816, slip op. at 5-6.

The Michigan Court of Appeals correctly addressed this issue.  In *Pulley v. Harris*,

465 U.S. 37, 41 (1984), the Supreme Court held that "a federal court may not issue the writ on the

basis of a perceived error of state law." The computation of a petitioner's prison term is a state law issue, and therefore not cognizable on habeas review. *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000), quoting *Williams v. New York*, 337 U.S. 241, 245 (1949).

Petitioner's Issue IV is not cognizable by this court on habeas review. His claim is based upon an alleged error of state law, for which habeas relief may not be granted. *Estelle*, 502 U.S. 62. Petitioner's argument that the trial court erred by scoring only the highest class felony and not all felonies is also based on state law and this court may not hear it on habeas review. Petitioner's Issue IV should be denied as it is not cognizable on Federal habeas review.

## IV. Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: August 20, 2012          /s/ Hugh W. Brenneman, Jr.
                                Hugh W. Brenneman, Jr.
                                United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LcivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).